### EARLY GRAIN & ELEVATOR CO. v. BARTELDES SEED CO.

(Circuit Court of Appeals, Fifth Circuit. November 21, 1922.)

No. 3824.

**Sales ⬳182(1)—Quality of sorghum seed held question for jury.**
> Whether or not sorghum seed tendered under a contract was "good, sound seed" *held* properly submitted to the jury on conflicting evidence.

In Error to the District Court of the United States for the Northern District of Texas; James C. Wilson, Judge.

Action at law by the Barteldes Seed Company against the Early Grain & Elevator Company. Judgment for plaintiff, and defendant brings error. Affirmed.

W. H. Kimbrough, M. J. R. Jackson, and R. E. Underwood, all of Amarillo, Tex., for plaintiff in error.

Howard B. Hopps, of Oklahoma City, Okl., and S. E. Fish, of Amarillo, Tex. (W. F. McLaury, of Oklahoma City, Okl., on the brief), for defendant in error.

Before WALKER, BRYAN, and KING, Circuit Judges.

BRYAN, Circuit Judge. February 14, 1918, the defendant (plaintiff in error) purchased from the plaintiff (defendant in error), for prompt delivery, a carload lot of sorghum cane seed. The purchase was effected by the exchange of telegrams. On the next day, February 15, defendant confirmed the purchase by letter, in which the seed

was described as "good, sound seed." Plaintiff withheld shipment at defendant's request until July 15, 1918. In letters to the plaintiff the defendant stated that its customer had canceled an order for the seed, and defendant was trying to resell it, and finally, upon the market price having greatly declined, defendant importuned plaintiff to rescind the sale. The plaintiff declined to do this, shipped the seed, and tendered delivery. The defendant refused to accept and pay for the seed, and it was subsequently resold by plaintiff at a loss. This suit is for the difference between the price obtained on resale and the contract price.

The defense is that the seed was not good and sound, but was of inferior germinating power. It was in evidence that sorghum seed is used for feeding as well as for planting purposes. The particular use which defendant intended was not disclosed by the correspondence between the parties. Whether it was within their contemplation that the seed should be used for planting is in dispute. The evidence is also in conflict as to whether the phrase "good, sound seed," used in defendant's letter confirming the purchase, has a trade meaning in the seed business. Witnesses for plaintiff testified that this phrase is not used to indicate the germinating power of seed. On the other hand, witnesses for defendant testified that such description indicates a reasonably high germinating power.

There was evidence that the standard germination of sorghum seed is 55 per cent., and that the germinating power of such seed for the season of 1917–18 was lower than usual. Several artificial tests were made from samples of the seed in controversy in the months of May, July, and August, 1918. Two of these tests were made by plaintiff, one by an expert for defendant, and one by a representative of the United States Department of Agriculture. The results of these tests varied, but according to the evidence most favorable to the plaintiff the seed was up to the standard which usually prevails. There was also testimony tending to show that the germinating power of sorghum seed deteriorates rapidly, and that therefore some of the tests were not reliable.

The court left it to the jury to determine whether the parties contemplated the use of the seed for planting purposes, and, if so, whether the seed tendered was of reasonably high germinating power, considering the general average throughout the country of that season's crop. The court further charged that, if the parties contemplated the use of the seed for planting purposes, there was an implied warranty by the plaintiff that the seed was reasonably fit for such use. There was verdict and judgment for the plaintiff.

The case presents only issues of fact, as to each of which the evidence is in direct conflict. We are of opinion that these issues were fairly submitted to the jury. Delivery was postponed at defendant's request. It is not shown that at the time of the sale, when it was defendant's duty to accept delivery under the contract, the seed was unsuitable for planting. In view of the evidence as to deterioration, a conclusive defense would not have been established, even by uncontradicted proof that the seed was unfit or unsuitable for planting when the tests were made on defendant's behalf several months later.

The court treated defendant's letter of confirmation, calling for "good, sound seed," as a part of the contract. Defendant had the benefit of this view, though that phrase was not contained in the telegrams between the parties when negotiations leading up to the contract were being conducted. It is now contended the court should have determined what percentage of germinating power the seed should have possessed, and that it ought not to have submitted that question to the jury. We think the objection is untenable, in the face of the evidence as to results usually attained in the planting of seed, considered in connection with plaintiff's evidence that the seed which it tendered to defendant was as good as is ordinarily obtained for planting purposes.

Error is not made to appear by any of the assignments, and the judgment is affirmed.